# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) ) | |
| Plaintiff, ) ) | Case No. 1:05CV00859 |
| vs. ) ) ) | **Order for Entry of Default Judgment, Permanent Injunction and Ancillary Equitable Relief** |
| JOHN POOLE a/k/a JAMES DREW, INDIVIDUALLY AND d/b/a MAC SYSTEMS, ) ) ) ) | |
| Defendant. ) ) ) | |

On October 20, 2005, the Commodity Futures Trading Commission (CFTC or Commission) served John Poole a/k/a James Drew, Individually and d/b/a Mac Systems (defendant) with the Summons and Complaint in this matter to enjoin him from further violations of Section 4o(1)(A) and (B) of the Commodity Exchange Act, as amended, (the Act), 7 U.S.C. § 6o(1)(A) and (B) (2002), and CFTC Regulation (Regulation) 4.41(a)(1) and (2), 17 C.F.R. § 4.41(a)(1) and (2) (2004). Defendant did not plead or otherwise respond to the Complaint within the time permitted by the Federal Rules of Civil Procedure.

The CFTC has now submitted its Application for Entry of Default Judgment, Permanent Injunction and Ancillary Relief (Application) pursuant to Federal Rule of Civil Procedure 55(b)(2). The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Application, and all oppositions thereto, and being fully advised in the premises, hereby

**GRANTS** the Commission's Application and enters findings of fact and conclusions of

1

law finding defendant liable as to all violations as alleged in the Complaint. Accordingly, the Court now issues the following Order for Entry of Default Judgment, Permanent Injunction and Ancillary Equitable Relief (Order) against defendant.

## FINDINGS OF FACT

**A.　Jurisdiction**

This Court has jurisdiction over the subject matter of this action and defendant pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1, in that defendant inhabits and transacts business in the Middle District of North Carolina, and the acts and practices in violation of the Act occurred within this district, among other places.

**B.　The Parties**

**Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq*., and the Regulations, 17 C.F.R. §§ 1.1 *et seq.*, promulgated thereunder.

**John Poole a/k/a James Drew** is an individual with last known addresses 6704 Kennette Drive, Pfafftown, North Carolina 27040. Poole has never been registered with the Commission in any capacity under either the name John Poole or James Drew.

From approximately 1993 to 2004, Poole conducted business as **Mac Systems**, with a former mailing address of 23404 Lyons Avenue, Suite 433, Newhall, California 91321 and a physical address of 25361 Via Pacifica, Valencia, California 91355 (Poole's former residence). Mac Systems has never been registered with the Commission in any capacity.

2

C.  Background

Beginning in or about April 2003, Poole, using the alias James Drew, created the www.optionstoriches.com website (website) to solicit prospective clients to purchase a trading system that purportedly taught users how to trade options on commodity futures contracts (commodity options) profitably. The trading system taught methods that allegedly predicted accurate price movements regardless of the commodity. The trading system consisted of self-paced manuals and CD-ROMs. Prospective clients who purchased the trading system would be granted access to a members-only website section that contained, among other things, current and customizable charts and prices, recommendations, and "What's Hot and What's Not" lists.

In promoting the trading system on the website, defendant fraudulently represented, without basis, that the trading system would yield huge profits and that it would allow prospective clients to predict accurately market movements. Defendant also posted on the website fictitious client testimonials attesting to the success that purported clients had achieved using the trading system. Defendant made all of the misrepresentations and omissions described below with the intent to defraud clients and prospective clients.

D.  Website Misrepresentations

1.  Profits

The website contained numerous representations that prospective clients could reap huge profits or become rich by trading commodity options and following the trading system offered on the website. For example, the website promised that:

> "The next few pages will show you how you can protect your future and **make a ton of cash** using a proven strategy that provides unlimited profit potential with very limited risk" (emphasis in original)

3

> "This is one of the last opportunities for the average person to become **incredibly rich** and experience a life you may have thought to be out of reach" (emphasis in original)
>
> "You have taken the first step to becoming **VERY WEALTHY** using a proven and **GUARANTEED** system that has been used by the Super Rich for decades to not just get rich but also increase their wealth substantially" (emphasis in original)

Further, the website provided that it was easy to make these huge profits:
> "Easy to learn system can ensure huge profits"
>
> "Trading Options is a Guaranteed opportunity that ANYONE can use to make huge profits"

In fact, defendant never had a client who made a profit using the trading system presented in defendant's website.

### 2. Market Movement Predictions

The website also stated that the trading system, as well as the information provided in the members-only section of the website, would allow a prospective client to know which way option prices would move in the future. For example the website stated that:

> "There is no way to have 100% accuracy in any investment system but this secret and easy to use system of deciphering the market has provided users with 86% accuracy and is used by some of the greatest traders of all time"
>
> "This information allows anyone to take advantage of this easy to learn and extremely accurate technique"
>
> "Let me show you how easy it can be to accurately predict prices"

In fact, defendant never had a client who ever accurately predicted the movement of any commodity market using the trading system presented in defendant's website, and defendant had no basis for representing that the system provided users with 86% accuracy in predicting market moves.

4

3.   **False Testimonials**

In addition, the website contained a number of testimonials from purported clients who supposedly had used the trading system offered by the defendant. For example:

> "'My first trade ($175) resulted in almost a $2,300 profit in less than 3 weeks.' – John Corsino[,] Santa Monica, Ca."
>
> "'My account went from $3,000 to $58,200 in less than four months.' Chuck Bauss[,] Lansing, Mi."
>
> "'I was able to turn $400 into $4,500 in just 5 weeks but I then used part of these profits to net $32,000. Within 2 ½ months I made a profit of close to $35k using nothing but the information and strategies provided in your program . . .' William Boyd – Andover, MN."

These client testimonials are false. Defendant simply made up the testimonials and placed them on the website in order to lure prospective clients to purchase his trading system.

**CONCLUSIONS OF LAW**

**Defendant Violated Section 4o(1)(A) of the Act and Regulation 4.41(a)(1)**

Defendant, while acting as a commodity trading advisor (CTA), violated Section 4o(1)(A) of the Act by defrauding prospective clients through material misrepresentations regarding the ability to achieve profits trading commodity options and the trading system's ability to predict accurately market movements regardless of the commodity. In addition, defendant defrauded clients and prospective clients by providing fictitious client testimonials attesting to the success that purported clients had achieved using the trading system.

To violate Section 4o(1) of the Act, defendant must have acted as a CTA. Section 1a(6) of the Act, 7 U.S.C. § 1a(6), defines a CTA as a person[1] who advises another about the value or advisability of trading in futures or commodity options contracts, either directly or through publications, writings or electronic media, for compensation or profit. Defendant was the owner of the website, and its sole business was selling commodity options trading systems for compensation. Ostensibly, the trading systems taught clients how to analyze market trends effectively and how to trade commodity options profitably. In addition, the members-only section of the website provided up-to-date information, recommendations and "What's Hot and What's Not" lists. Finally, defendant offered the trading system through the Internet, a means of interstate commerce. Thus, defendant is firmly within the statutory definition of a CTA. Defendant therefore acted as a CTA, whether or not defendant was registered, or required to be registered, as such. *See Commodity Trend Service v. CFTC*, [1998-1999 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,777 at 48,705 (N.D. Ill. Sept. 29, 1999), *aff'd*, 233 F.3d 981 (7th Cir. 2000) (determining that corporation regularly issuing commodity-related publications which

---

[1] Under the Act, "the term 'person' imports the plural or singular, and includes individuals, associations, partnerships, corporations, and trusts." Section 1a(28), 7 U.S.C. § 1a(28) (2002).

contain specific recommendations for buying and selling commodity futures or options contracts was a CTA); *see also CFTC v. AVCO Financial Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998), *aff'd in relevant part sub nom, CFTC v. Vartuli*, 228 F. 3d 94 (2d Cir. 2000) (holding that company acted as a CTA under "the plain language of the [Act]" when it marketed computer software that generated specific recommendations to buy and sell futures contracts); *In re R&W Technical Services, Ltd.*, [1998-1999 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,582 (CFTC March 16, 1999), *aff'd in relevant part*, *R&W Technical Services, Ltd. v. CFTC*, 205 F.3d 165, 170 (5th Cir. 2000) (providing that signals generated by computerized trading system, together with advertisements which convince clients that the signals will be highly profitable, constitute advising others).

Section 4o(1)(A) prohibits both registered and unregistered CTAs, as well as persons exempt from registration, from making material misrepresentations and omissions to their clients or prospective clients regarding futures and options transactions. *See CFTC ex rel Kelley v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985); Section 4.15 of the Regulations, 17 C.F.R. § 4.15 (2004). Similarly, Commission Regulation 4.41(a)(1) prohibits a CTA, whether registered or unregistered, from advertising in a fraudulent or misleading manner. *In re Staryk*, [1996-1998 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 27,206 at 45,810 (CFTC Dec. 18, 1997); *Kelley v. Carr*, 442 F.Supp. 346, 351-354 (W.D.Mich. 1977), *aff'd in part and rev'd in part*, 691 F.2d 800 (6th Cir. 1980).

Under these provisions, liability for fraud involving commodity options is established when 1) a person or entity makes a misrepresentation, misleading statement, or a deceptive omission; 2) the misrepresentation, misleading statement, or deceptive omission is material; and 3) the person or entity acts with scienter.

7

First, defendant made misrepresentations, misleading statements and deceptive omissions when he represented on the website that the trading system would yield huge profits and that it would allow prospective clients to predict accurately market movements. Defendant also misrepresented the truthfulness of the client testimonials that were published on the website attesting to the success that purported clients had achieved using the trading system.

Second, defendants' misrepresentations, misleading statements and deceptive omissions were material. A statement is material if a reasonable person would view that fact as important in making a trading decision—in other words, as including information significantly altering the total mix of information already in the person's possession. *See CFTC v. Noble Wealth Data Info. Serv., Inc*, 90 F. Supp. 2d 676, 686 (D. Md. 2000); *United States v. Smith*, 155 F.3d 1051, 1064 (9th Cir. 1998); *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir.1994), *cert. denied*, 516 U.S. 810 (1995); *SEC v. Blinder, Robinson & Co., Inc*., 542 F.Supp. 468, 474 (D. Colo. 1982) (citing *Affiliated Ute Citizens v. U.S.,* 406 U.S. 128, 153-154 (1972); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997); *Sudol v. Shearson Loeb Rhoades, Inc.*, [1984-1986 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 22,748 at 31,119 (CFTC Sept. 30, 1985) (citing *TSC Industries, Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976)); *CFTC v. R.J. Fitzgerald & Co*., 310 F.3d 1321, 1328 (11th Cir. 2002); *CFTC v. Rosenberg*, 85 F.Supp.2d 424, 447 (D.N.J. 2000).

In general, all manner of omissions and misrepresentations of material fact regarding commodity options transactions violate the antifraud provisions of the Act, including omissions and representations concerning the likelihood of profit and other matters that a reasonable investor would consider material to his investment decisions. *See JCC, Inc., et al. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995) (finding misrepresentations concerning the likelihood of profits and risk of loss); *CFTC v. Commonwealth Financial Group, Inc.*, 874 F. Supp. 1345, 1353-54

8

(S.D. Fla. 1994) (holding that misrepresentations regarding the trading record and experience of a firm or broker are fraudulent because past success and experience are material factors to reasonable investors); *CFTC v. Sidoti*, 178 F.3d 1132, 1136 (11th Cir. 1999) (finding fraudulent solicitation where associated persons distorted firm's poor track record); *CFTC v. J.S. Love & Assocs. Options, Ltd.*, 422 F. Supp. 652, 655 (S.D.N.Y. 1976) (finding misrepresentations concerning profit potential and the trading experience of account executives.); *see also First Nat. Monetary Corp. v. Weinberger*, 819 F.2d 1334 (6th Cir. 1987); *CFTC v. US Metals Depository Co.*, 468 F.Supp 1149 (S.D.N.Y. 1979); *CFTC v. Crown Colony Commodity Options Ltd.,* 434 F.Supp 911 (S.D.N.Y. 1977); *Saxe v. E. F. Hutton & Co., Inc.*, 789 F. 2d 105, 110-111 (2d Cir. 1986); *Hirk v. Agri-Research Council Inc.*, 561 F. 2d 96, 103-104 (7th Cir. 1977); *Rosenberg*, 85 F.Supp.2d at 447-448.

Third, defendant acted with scienter. The scienter element is established when an individual's acts are performed "with knowledge of their nature and character." *Wasnick v. Refco, Inc.*, 911 F.2d. 345, 348 (9th Cir. 1990). The Commission must demonstrate only that the defendant's actions were "intentional as opposed to accidental." *Lawrence v. CFTC*, 759 F. 2d 767, 773 (9th Cir. 1985). Scienter requires proof that the respondent committed the alleged wrongful acts "intentionally or with reckless disregard for his duties under the Act." *Drexel Burnham Lambert, Inc. v. CFTC*, 850 F.2d 742, 748 (D.C. Cir. 1988) (determining that recklessness is sufficient to satisfy scienter requirement); *see Hammond v. Smith Barney, Harris Upham & Co.,* [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,617 at 36,657-36,659 (CFTC March 1, 1990) (holding that scienter is a necessary element to establish futures fraud); *Do v. Lind-Waldock & Co.* [1994-1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) 25,516 at 43,321 (CFTC Sept. 27, 1995) (providing that a reckless act is one where there is so

little care that it is difficult to believe the [actor] was not aware of what he was doing); *see also CFTC v. Noble Metals Int'l. Inc*., 67 F. 3d 766, 774 (9th Cir. 1995).

Defendant made knowing material misrepresentations that violated both Section 4o(1)(A) and Regulation 4.41(a)(1) by advertising on the website that clients would make large sums of money in any commodity market by purchasing commodity options following the advice set out in trading system materials. Defendant made these material misrepresentations notwithstanding that he knew that the trading system had not achieved these results for him or others. Defendant knew that the profit representations made on the website were not based on actual trading of the trading system. Certainly, a reasonable client would think it material that the trading program at issue had never been tested through actual trading. *See Levine v. Refco, Inc.,* [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24, 488 at 36,115 (CFTC July 11, 1989); *see also Skorupskas*, 605 F. Supp. 923, 933 (E.D. Mich. 1985) (misrepresenting performance tables as being actual trading results violated Section 4o of the Act).

Further, defendant acted with scienter because he knew that the client testimonials posted on the website touting the profits achieved using the system were false and fictitious since he knew that no client achieved the profits using the trading system touted by the website. Defendant, therefore, violated 4o(1)(A) of the Act and Regulation 4.41(a)(1).

10

**B.      Defendant Violated Section 4o(1)(B) of the Act and Regulation 4.41(a)(2)**

Section 4o(1)(B) states that it is a violation for a commodity trading advisor "to engage in any … practice or trading system or course of business which operates as a fraud or deceit upon any client or prospective client…." Similarly, Regulation 4.41(a)(2) prohibits advertising by a commodity trading advisor that operates as a fraud or deceit upon clients or prospective clients. Section 4o(1)(B) applies to persons who fit the definition of a commodity trading advisor, including both registered and unregistered CTAs, and person exempt from registration. As noted above, defendant, as the vendor of the trading system, falls within the statutory definition of a commodity trading advisor. *See* Section 1a(6)(A)(i) of the Act.

Unlike Section 4o(1)(A) of the Act, scienter is not required to prove a violation of Section 4o(1)(B), *see In re Slusser*, [1998-1999 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶27,701 at 48,315 (CFTC July 19, 1999), *aff'd in relevant part*, *Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000), or a violation of Section 4.41(a)(2), *see Commodity Trend Service v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000). Defendant violated Section 4o(1)(B) of the Act and Regulation 4.41(a)(2) by virtue of the same conduct that violated Section 4o(1)(A) of the Act and Regulation 4.41(a)(1), described above. Thus, defendant, acting as a CTA, violated Section 4o(1)(B) of the Act and Regulation 4.41(a)(2) by engaging in a transaction, practice or trading system of business which operated as a fraud or deceit upon clients and prospective clients by allowing materially misleading claims to be included on the website.

**C.      Need for a Permanent Injunction and Other Ancillary Relief**

Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission has made a showing

11

Case 1:05-cv-00859-WLO-PTS     Document 12     Filed 05/01/06     Page 11 of 15

that defendant has engaged in acts and practices which violate Section 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1) (A) and (B), and Regulation 4.41(a)(1) and (2), 17 C.F.R. § 4.41(a)(1) and (2). Unless restrained and enjoined by this Court, there is a reasonable likelihood that defendant will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations. The imposition of other ancillary equitable relief is required to comply with the basic objectives of the Act.

Further, Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), provides that "the Commission may seek and the court shall have jurisdiction to impose, on a proper showing, on any person found in the action to have committed any violation [of the Act] a civil penalty." The civil monetary penalty (CMP) shall be "not more than the greater of $120,000 or triple the monetary gain to such person for each such violation." Regulation 143.8(a)(1)(ii), 17 C.F.R. § 143.8(a)(1)(ii). Therefore

**IT IS HEREBY ORDERED** that: defendant, all persons insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of defendant, and all persons insofar as they are acting in active concert or participation with defendant who receive actual notice of this order by personal service or otherwise, shall be prohibited and restrained from directly or indirectly:

> 1. while acting as a CTA, a) employing a device, scheme or artifice to defraud clients or prospective clients, or b) engaging in a transaction, practice or course of business that operates as a fraud or deceit upon clients or prospective clients, in violation of Section 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B), and Regulation 4.41(a)(1) and (2), 17 C.F.R. § 4.41(a)(1) and (2);

2. engaging in, controlling or directing the trading for any commodity futures, security futures, options on futures, or foreign currency options account, in any markets or on any entity regulated by the Commission for himself or on behalf of any other person or entity, whether by power of attorney or otherwise; and

3. applying for registration or seeking exemption from registration with the Commission in any capacity or engaging in any activity requiring registration or exemption from registration, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9), and acting, directly or indirectly, as a principal, officer, director, supervisor, agent or employee of any person registered, required to be registered or exempted from registration, unless such exemption is pursuant to Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9). This includes, but is not limited to, soliciting, accepting or receiving any funds, revenue or other property from any person, giving commodity trading advice for compensation or soliciting prospective customers related to the purchase or sale of any commodity futures, security futures, options, options on futures, or foreign currency futures, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9).

**IT IS FURTHER ORDERED** that: Defendant's fraudulent conduct constitutes serious violations of the Act and strikes at the core of the Act's regulatory system. Accordingly, defendant shall pay a CMP in the amount of $240,000—which represents a $120,000 CMP for defendant's violation of Section 4o(1)(A) of the Act and Regulation 4.41(a)(1) and a $120,000 CMP for defendant's violation of Section 4o(1)(B) of the Act and Regulation 4.41(a)(2).

13

Payment of the CMP is due and owing upon entry of this Order. Defendant shall pay post-judgment interest on the CMP amount thereon from the date of this Order until the CMP amount is paid in full at the rate of 1.46%, pursuant to 28 U.S.C. § 1961;

Defendant shall submit payment of the CMP to the Commodity Futures Trading Commission, Division of Enforcement, 1155 21st Street, N.W., Washington, D.C. 20581 to the attention of Ms. Dennese Posey. Payment must be made by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order, made payable to the Commodity Futures Trading Commission. The payment(s) shall include a cover letter that identifies Defendant and the name and docket number of this proceeding. Defendant shall simultaneously transmit a copy of the cover letter and the form of payment to the Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, N.W., Washington, D.C. 20581;

**IT IS FURTHER ORDERED** that: If any provision of this Order, or the application of any provision or circumstance, is held invalid, the remainder of the Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding;

Copies of this Order may be served by any means, including facsimile transmission, upon any financial institution, or any other entity or person that may have possession, custody or control of any documents or assets of defendant that may be subject to any provision of this Order;

Within seven (7) days after the entry of this Order, defendant shall serve upon the Commission a signed acknowledgement that he has been served with the Order;

Defendant shall serve any notices or materials required by this Order, and any applicable

14

notices required by the Federal Rules of Civil Procedure, upon the Commission by delivering a copy to Richard Glaser, Associate Director, Division of Enforcement, Commodity Futures Trading Commission, 1155 21st Street, NW, Washington, D.C. 20581; and

This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of the Court.

**SO ORDERED**, this 1st day of May 2006, at Greensboro, North Carolina.

UNITED STATES DISTRICT JUDGE

15